```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF OHIO
                           WESTERN DIVISION


Robert Ferrell,                :
                               :
          Plaintiff,           :
                               :
     vs.                       :    Case C-1-02-0190
                               :
Lakota School District aka     :    Memorandum Opinion
Lakota Local School District   :         and
                               :         Order
          Defendant.           :
```

Plaintiff Robert W. Ferrell, who has forty years experience as a commercial driver, was employed by Defendant for Lakota School District as a substitute bus driver for the 2000-01 school year.[1] In August 2001 he attended a substitute drivers meeting, at which he and other drivers were offered full-time positions as contract bus drivers with permanent routes. The dispute in this case arises from the manner of assignment of bus routes at that meeting.

Defendant's long-standing practice of assigning routes had consisted of the new contract drivers selecting routes based on their date of hire as substitute drivers, with the most senior driver selecting first. At the August meeting, however, this practice was altered when Larry Lane, the Director of Transportation for Defendant, designated which route each driver

---

[1] Plaintiff had three years experience as a substitute bus driver.

1

would receive, rather than allowing the drivers to select their preferred routes.

The longest route was assigned to Yvette Ferrell[2], a thirty year-old female driver with three to six months experience. Plaintiff, who was then 61 years old and would have had the option of selecting a longer route under the traditional date-of-hire selection process, was assigned a shorter route with the morning as a standby route.

If assigned a standby route a driver did not report for a specific bus route, but reported daily for the assignment of a route. If no route is assigned the driver was paid for up to two hours for that day. It is Plaintiff's contention that a driver assigned to a longer route earned greater compensation because the drivers were paid by the hour and longer routes took more time to complete.

Plaintiff suspected that the longest route had been assigned to Ms. Ferrell because she was a young, attractive female. Apparently, Ms. Ferrell had received compliments from Mr. Lane and his second-in-command, Jeff Robertson, regarding her attractive and youthful appearance.[3]

---

[2] Yvette Ferrell is not related to Plaintiff.

[3] Defendant disputes that such statements were made. However, Plaintiff has presented affidavits, including Ms. Ferrell's, that such statements were made to Ms. Ferrell. (Doc. No. 27, Ferrell Aff. pp. 2-3, Koenig Aff. p. 2).

At the conclusion of the meeting, Plaintiff approached Mr. Lane to complain about the manner in which routes were assigned, an encounter which quickly escalated into a heated exchange. According to Plaintiff, Mr. Lane "offensively jerked" the route paperwork from his hand and fired him as a permanent driver. (Doc. No. 1, ¶¶ 20-23).

Defendant's version of the events differs from Plaintiff's. Defendant contends that Plaintiff argued with Mr. Lane, refused to accept the offer as a permanent driver, and refused further work as a substitute driver. (Doc. No. 25, ¶ 6).

Plaintiff maintains that after the August meeting Defendant reverted back to the practice of allowing drivers to select their routes by substitute date of hire. Defendant does not expressly deny Plaintiff's contention. However, in its response to the Equal Employment Opportunity Commission Defendant claimed that with respect to route assignments made subsequent to the August assignments, Mr. Lane assigned the most difficult route to the most experienced driver and allowed the substitute drivers to decide how the remaining routes would be assigned. (Doc. No. 1, Exh. 4). In response, Plaintiff has presented evidence that all of the routes were selected by the drivers based on their date of hire. (Doc. No. 27, Legates Aff., Koenig Aff. p.3; Combs Tr. 46).

As a result of these events, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging

discrimination based on age and "reverse" discrimination based on gender. After the EEOC dismissed his charges, Plaintiff filed a Complaint with this Court claiming Defendant's actions violated Title VII, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.,("ADEA").[4] He also included a claim for assault (or battery) based on Mr. Lane's action of "offensively jerking" the route paperwork from Plaintiff's hand.[5]

The action is now before this Court on Defendant's motion for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue

---

[4] In its motion, Defendant states that Plaintiff pled his claims only as a violation of Title VII. (Doc. No. 25, p. 4, fn. 1). However, Plaintiff's Complaint clearly states that the claims are being brought under both Title VII and the ADEA. (Doc. No. 1, Preamble, ¶ 24, and ¶ 26).

[5] In the Complaint, Plaintiff refers to his claim as a claim for "civil assault." (Doc. No. 1, ¶ 21, 34). However, the facts alleged by Plaintiff actually support a claim for battery (an offensive touching) rather than assault (the reasonable fear of an offensive touching). (Doc. No. 1, ¶¶ 20-21).

for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, *Superior Roll Forming Co. v. InterRoyal Corp.*, 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962).

Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or

national origin . . ..." 42 U.S.C. § 2000e-2(a)(1). The ADEA extends these protections to discrimination based on an individual's age. 29 U.S.C. § 623(a)(1). A plaintiff may establish a claim for discrimination through either direct or circumstantial evidence. *Johnson v. University of Cincinnati,* 215 F.3d 561, 572 (6th Cir. 2000), *cert. denied*, 531 U.S. 1052 (2000)(Title VII); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)(ADEA).

Under the direct evidence approach, a plaintiff must present evidence that he or she was discriminated against because of his or her protected status. *Id.* Once the plaintiff meets this burden, the burden of persuasion shifts to the defendant to show that it would have taken the same action even without the discriminatory motivation. *Id.*

Under the circumstantial evidence approach, a plaintiff must first establish a prima facie case of discrimination using the framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this approach, a plaintiff must show (1) that he or she is a member of a protected group, (2) that he or she was subject to an adverse employment decision, (3) that he or she was qualified for the positions, and (4) that he or she was replaced by a person outside of the protected class. *Id.; see also, Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th cir. 1992). A plaintiff may also satisfy the fourth prong by showing that the

defendant treated similarly situated non-protected persons more favorably than the plaintiff. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

In cases of reverse gender (*i.e.*, male) discrimination, courts have modified the *McDonnell Douglas* framework to require a plaintiff to present evidence from which a trier of fact could infer that the defendant discriminates against males. *See Murray v. Thisteldown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)(quoting *Parker v. Baltimore and Ohio Railroad Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)); *see Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 255 (6th Cir. 2002). Accordingly, in order for a reverse discrimination plaintiff to establish a prima facie case of discrimination, he must also present evidence establishing that background circumstances exist to support the suspicion that the defendant is the unusual employer who discriminates against males. *Zambetti*, 214 F.3d at 255.

The Sixth Circuit has recognized that this "background circumstances" prong requires a plaintiff in a reverse discrimination case to satisfy a more onerous standard than a plaintiff in a traditional discrimination case. *Id.* at 257. The court has expressed concern regarding this additional burden:

> [W]e note that the "background circumstances" prong, only required of "reverse discrimination" plaintiffs, may impermissibly impose a heightened pleading standard on majority victims of discrimination. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n.7 (6th Cir. 1994); *Ulrich v. Exxon Co.*, 824 F.Supp. 677, 683-84

> (S.D. Tex. 1993)(collecting cases). In *Pierce*, another panel of this Court stated, "[w]e have serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." 40 F.3d at 801 n.7. The panel, though, found it was unnecessary to reach the issue because the plaintiff did not satisfy another portion of the *prima facie* case. *Id.* We share the concern that, in a case such as this one, where the plaintiff has created a genuine issue of material fact on pretext . . . the potential application of a heightened pleading standard could be the difference between granting and denying summary judgment.

*Id.* However, to date, the Sixth Circuit has not eliminated the "background circumstances" prong from the elements of a reverse discrimination claim.

Once a plaintiff establishes a prima facie case of discrimination the burden of production shifts to the defendant to proffer legitimate non-discriminatory reasons for its actions. *Johnson,* 215 F.3d at 573; *Manzer*, 29 F.3d at 1802. If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are pretextual. *Id.* The plaintiff may prove the defendant's reasons are pretextual by establishing that (1) the stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, and (3) the stated reasons were insufficient to explain the defendant's action. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 346 (6th Cir. 1997). When the plaintiff proves pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional

evidence of discrimination.  *Id.*  In the second situation, the factual basis for the adverse employment action is not challenged; therefore, the plaintiff must adduce additional evidence of discrimination in order to prevail.  *Id.*

In the present case, Plaintiff has not presented any direct evidence of discrimination.  Therefore, he must establish a prima facie case of discrimination by satisfying all four prongs of the *McDonnell Douglas* test.

Defendant does not dispute that the Plaintiff has satisfied the first and third prong of the *McDonnell Douglas* test with respect to Plaintiff's reverse gender and age discrimination[6] claims. Defendant contends, however, that Plaintiff cannot establish the second and forth prongs of the test — (1) that he was subject to an adverse employment decision and (2) that he was treated less favorably then similarly situated non-protected individuals.6

According to Defendant, Plaintiff was not subject to an adverse employment decision because he was "offered a job, earning <u>more or less</u> the same income, working <u>more or less</u> the same hours, doing the same work and under the same conditions as the other

---

[6]As previously discussed, Plaintiff must establish the background circumstances that Defendant is the unusual employer that discriminates against males in order to succeed on his reverse gender discrimination claim. Defendant has not, however, raised the absence of such background circumstances as grounds for summary judgment. Therefore, the Court will not address this issue at this time.

would-be new full-time drivers." (Emphasis added) (Doc. No. 25, pp. 3-4).

Plaintiff disputes Defendant's contention that all new drivers would receive the same compensation and work the same hours. In fact, the entire basis of Plaintiff's claim is that he received less compensation because Defendant assigned the longest bus route to a younger, female driver and that because the drivers were paid on an hourly basis those who had longer routes, and thus worked more hours, received greater compensation.[7]

Defendant presents a number of arguments in response to Plaintiff's claim that he was subject to an adverse employment decision.

First, Defendant argues that there was no adverse employment action because both Plaintiff and Ms. Ferrell were paid the same hourly rate for their routes, and it just so happened that Plaintiff's route was 1.08 hours shorter than Ms. Ferrell. This Court does not see the relevancy of Defendant's argument. Plaintiff is not arguing that the adverse employment action was a difference in hourly rates. Rather, he is arguing that the adverse employment action was his assignment of a shorter route which

---

[7]Plaintiff's compensation calculations are based on the hourly rate he earned as a substitute driver. According to Plaintiff, his substitute driver hourly rate would be the same hourly rate he would have received as a full-time driver. Defendant asserts that the hourly rate of all new drivers is the same, regardless of the rate they earned as substitute drivers. This issue need not be resolved here. Even if the drivers all earned the same amount per hour a longer route would still result in greater compensation.

ultimately resulted in less compensation then he would have earned had he been able to select his preferred route pursuant to the traditional practice.

Next, Defendant argues that there was no adverse employment action because "somebody had to drive each route" and it has "offered unrebutted evidence that the basis for making the assignments was the subjective judgment of management." (Doc. No. 33, p. 4). Defendant is confusing the basis of its decision with the effect of its decision. Just because an action is the result of a management decision does not mean that it is not adverse. Defendant's argument that the assignment of routes was a management decision is actually related to whether it had a legitimate, non-discriminatory reason for its action, not whether its actions were adverse to Plaintiff.

Finally, Defendant argues that "route assignments did not matter significantly to the overall compensation or terms of employment for any driver." (Doc. No. 33, p.4). According to Mr. Lane's affidavit, drivers of shorter routes and standby routes had the potential of earning the same as drivers of longer routes due to payment of standby time and the availability of additional hours through field trips, athletic events, etc. (Doc. No. 25, Lane Aff. ¶¶ 1-2). Beyond this general statement included in Mr. Lane's affidavit, Defendant has not presented any other evidence to support this contention.

Plaintiff, on the other hand, has presented evidence from Lakota bus drivers that a longer route was more desirable because

11

it resulted in greater compensation for the driver. (Doc. No. 27, Y. Ferrell Aff. p. 3, Koenig aff. pp. 3-4, R. Ferrell Aff. p. 3, L. Ferrell Aff. p. 2; Combs Tr. 29, 33, 37).

Thus, the question of whether a longer route resulted in greater overall compensation, and thereby constituted an adverse employment action, is a disputed issue of fact that must ultimately be resolved by the trier of fact.

Because there is a genuine issue as to whether Plaintiff suffered an adverse employment action, summary judgment based on Defendant's argument that this was not so cannot be accepted.

To satisfy the fourth prong of the *McDonnell Douglas* test Plaintiff must establish that a similarly situated young, female driver was treated more favorably than him. The Sixth Circuit has held that in order to be similarly situated, employees need not be identical but need only be similar in all relevant aspects. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

It is undisputed that Ms. Ferrell is female and is substantially younger than Plaintiff. Furthermore, Plaintiff and Ms. Ferrell were similarly situated. They both had similar training, and Defendant does not dispute that they were both qualified to drive all of the available routes. (Doc. No. 33, p.2). Additionally, Plaintiff and Ms. Ferrell had the same supervisor, Mr. Lane, and it was Mr. Lane who assigned the routes

at the August meeting.  Finally, by assigning the longest and thus presumptively highest paying route to Ms. Ferrell, Mr. Lane treated her more favorably than Plaintiff.

Defendant argues that there is no evidence of disparate treatment because "ten new drivers were offered full-time jobs in August, 2001, 5 men and 5 women; 5 over the age of 40 and 5 younger than 50." However, the alleged discriminatory treatment was not in the hiring of drivers but in the assignment of routes.  The fact that Defendant hired in a non-discriminatory manner is irrelevant if it assigned routes, and thus awarded compensation, in a discriminatory manner.

Because Plaintiff has presented evidence establishing a prima facie case of age and reverse gender discrimination the burden of production shifts to Defendant to proffer legitimate non-discriminatory reasons for their action.  *Johnson,* 215 F.3d at 573.

Defendant's proffered reason for assigning routes, rather than allowing the new drivers to select routes based on seniority, was a management decision that certain drivers were more suited to certain routes considering "the terrain and the mix of students on the route."  (Doc. No. 25, Lane Aff. ¶ 4).  Certainly, if true, this is a legitimate non-discriminatory reason for Defendant's action.  *See O'Sullivan v. State of Minnesota*, 191 F.3d 965, 969 (8th Cir. 1999) ("Budgetary and labor management considerations are legitimate, non-discriminatory reasons for layoff decision").

13

For purposes of summary judgment, the burden now shifts to Plaintiff to present evidence establishing that Defendant's proffered reason was pretextual.

Plaintiff has presented evidence from which a trier of fact could infer that Defendant's proffered reason for assigning routes, to match drivers to appropriate routes, was pretextual.

First, there is the evidence that the designation of routes at the August meeting was apparently a one-time occurrence and that after the August route assignments Defendant reverted back to its previous practice of allowing drivers to select their own routes.

Second, Defendant assigned the longest, and presumably more difficult route, to Ms. Ferrell who only had three to six months experience.

Third, Plaintiff's and Ms. Ferrell's supervisors had made admiring comments regarding Ms. Ferrell's attractive and youthful appearance.

Finally, it appears that the decision to assign routes rather than allowing drivers to select routes was a last-minute decision by Mr. Lane.[8] If these facts are proven to be true, a trier of fact could infer that Defendant's proffered reason for assigning routes was pretextual.

---

[8] Plaintiff has presented evidence that Mr. Lane told the drivers at the beginning of the August meeting that the routes would be selected in the traditional manner by substitute driver date of hire. (Doc. No. 27, Koenig Aff. p. 2, L. Ferrell Aff. p. 2, R. Ferrell Aff. p. 1).

Defendant also devotes a great deal of effort to arguing that Plaintiff, as a substitute driver, was not entitled to the seniority preferences provided for in the collective bargaining agreement for contract drivers. Because Plaintiff did not have any seniority under the collective bargaining agreement at the time of the August meeting, Defendant argues that it was not required to assign routes based on seniority but could assign routes in any manner in which it chose. Defendant is absolutely correct. However, the issue in this case is not whether Plaintiff was entitled to have his route assigned based on his seniority as a substitute driver. Rather, the issue is whether Defendant's decisions regarding route assignments were based on a discriminatory motive. If they were, Defendant's actions violated Title VII and/or the ADEA.

For these reasons, the Court concludes that there is a genuine issue of material fact as to whether Defendant's proffered legitimate non-discriminatory reason for its actions was pretextual. Thus, Defendant is not entitled to summary judgment on Plaintiff's Title VII and ADEA claims on this basis.

Although not separately pled from Plaintiff's Title VII and ADEA claims, Plaintiff's complaint can be read as alleging a claim for retaliation.[9] Defendant argues that such a claim must fail

---

[9] In its reply brief, Defendant seems to be implying that Plaintiff's claim for retaliation was not pled or was inadequately pled. However, under the simplified notice pleading standards of

because Plaintiff has "failed to show from what position plaintiff was supposedly fired and how any damages supposedly resulted therefrom."[10]  (Doc. No. 33, p. 6).

However, Plaintiff has presented evidence that he was fired from his new position as a permanent driver.  (Doc. No. 27, Y. Ferrell Aff. p. 1, Koenig Aff. p. 2, R. Ferrell Aff. p. 2; Combs Tr. 40-41).  Although Defendant disputes that Plaintiff was fired from such a position, Defendant's argument merely creates a disputed issue of fact, not grounds for summary judgment.  With respect to damages, the damage Plaintiff suffered is quite obvious — his loss of a permanent position as a bus driver and all the benefits such a position entails.

Finally, Defendant argues that Plaintiff's assault claim should be dismissed because he (1) does not allege that he was injured or damaged and (2) does not allege that he suffered a reasonable fear of immediate physical violence.  In the alternative, Defendant argues that in the event Plaintiff's Title VII/ADEA claims are dismissed, the Court should not maintain jurisdiction over Plaintiff's state law claim.  Defendant's arguments are without merit.

---

F.R.Civ.P. 8, Plaintiff adequately pled retaliation in his complaint.  (Doc. No. 1, ¶ 23).

[10]The Court would not normally address this issue because Defendant failed to raise it as grounds for summary judgement in its motion. However, because the Court ultimately resolves this issue in favor of the Plaintiff, it will be considered.

Under Ohio law, nominal damages are available for civil claims of assault and battery when no actual damages are shown. *See Anderson v. St. Francis-St. George Hospital, Inc.,* 671 N.E.2d 225, 229 (Ohio 1996)*; Simms v. Kroger Co.,* No. 95APE08-1056, 1996 WL 87465 at *4-*5 (Ohio App. Feb. 29, 1996). Furthermore, civil assault consists of the "willful threat or attempt to harm or **_touch another offensively_**, which threat or attempt reasonably places the other in fear of such contact." *Smith v. John Deere Co.*, 614 N.E.2d 1148, 1154 (Ohio App. 1993)(emphasis added). Thus, a civil assault does not require a fear of physical violence but only requires a reasonable fear of an offensive touching. Defendant has not offered any argument or cited to any case law that Mr. Lane's actions, as a matter of law, could not or did not cause Plaintiff to have a reasonable fear of an offensive touching.[11] Thus, Defendant's motion with respect to this issue is not well-taken.[12]

For these reasons, Defendant's Motion for Summary Judgment (Doc. No. 25) is **DENIED** in all of its particulars.

---

[11] It is unclear to Court whether Plaintiff's claim is for assault (a fear of offensive touching, battery (offensive touching), or both. Because Defendant's argument treated the claim as a claim for assault, the Court analyzed it as such.

[12] Defendant's argument that the Court should not maintain jurisdiction over this claim is moot in light of the Court's decision not to grant summary judgment on Plaintiff's Title VII/ADEA claims.

**IT IS SO ORDERED**

                                            <u>s/David S. Perelman</u>
                                            David S. Perelman
                                            United States Magistrate Judge